# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1031

HARRISON FRANKLIN,

*Petitioner-Appellant,*

*v.*

GARY R. MCCAUGHTRY, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-0278—**William C. Griesbach**, *Judge.*

ARGUED JUNE 15, 2004—DECIDED FEBRUARY 24, 2005

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* In February 1996, Harrison Franklin was convicted by a Wisconsin court of armed robbery, reckless endangerment, and bail jumping. To make matters worse, at the time he committed these crimes he was a repeat offender and free on bond pending his appeal of a prior battery conviction. After exhausting his remedies in the state courts, Franklin filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the petition but granted a certificate of appealability on the issues of trial-judge bias and ineffective assistance of counsel. On appeal, Franklin alleges that the state court judge was actually biased and that the Wisconsin Court of Appeals' rejection of this point was contrary to, and consti-

tuted an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Although the burden is high on habeas corpus petitioners, we conclude that Franklin has met these demanding standards here; we therefore vacate and remand for issuance of the writ.

## I

In 1996 Franklin was charged with armed robbery, reckless endangerment, and bail jumping. His case was assigned to Judge Bruce E. Schroeder, of the Circuit Court of Kenosha County, Wisconsin. At the time, Judge Schroeder was presiding over another case, *State v. Taylor*, No. 95 CM 1326. In *Taylor*, Judge Schroeder had denied Taylor release without bail and set an appeal bond. Taylor sought relief from the Wisconsin Court of Appeals, alleging that the appeal bond was contrary to the rule established in *State v. Lipke*, 521 N.W.2d 444 (Wis. Ct. App. 1994). In *Lipke*, the court held that a defendant cannot be denied the right to release pending an appeal solely on the ground of indigence. *Lipke*, 521 N.W.2d at 448.

In April 1996, Judge Schroeder took the highly unusual step of filing a memorandum with the state court of appeals in support of his decision to deny Taylor's request for release without bail. In that memorandum, he asserted that the remarks in *Lipke* regarding the subject of bail were dicta and therefore not binding precedent. He further opined that *Lipke* would result in "absurd and unreasonable" outcomes "because the same indigent defendant who is held pretrial for failure to post bail is entitled to immediate release without cash bail upon establishment of his guilt."

To illustrate his point, Judge Schroeder pointed to Franklin's case. He began by stating, "I have also now pending before me the case of *State v. Harrison Franklin*, 96 CF

126." The judge then gave a detailed account of Franklin's five previous convictions, relying on information that he had gleaned from a pre-sentence report in one of Franklin's earlier cases. The last conviction, in 1995, resulted in a three-year sentence, but Franklin was released without posting bail pursuant to *Lipke*. Judge Schroeder concluded his point with the following statement:

> Although the Court of Appeals accepted his attorney's no merit report on December 20, 1995, he was not reincarcerated until February 21, 1996, when he was taken into custody in a tavern where it is alleged, according to the current file, that he stabbed one man four times and another twice, during an armed robbery.

Franklin was convicted in May. In July, before sentencing, an article appeared in the *Kenosha News* titled, "Legislators Oppose Freeing Indigent Without Bail." The article referred to two cases, Franklin's and Taylor's. The article further reported that both Judge Schroeder and Assistant District Attorney Dooley (the attorney who prosecuted Franklin's case) had sent their written challenges to the Wisconsin Court of Appeals.

Prompted by the article, Franklin moved to recuse Judge Schroeder from further proceedings in the case "based on the appearance of partiality and impropriety arising from the Judge's opinion of a defendant's release pending appeal." Judge Schroeder heard the motion to recuse prior to sentencing. While Franklin was presenting his recusal motion, Judge Schroeder interrupted Franklin and asked, "What did I have to do with the article?" After Franklin explained that the article had mentioned and quoted him, Judge Schroeder changed tacks and asked, "What did I do that suggests some lack of impartiality towards your client?"

Judge Schroeder continued to deny that his impartiality was in doubt, making this statement on the record:

I am really—I want, so the record is clear, because I refuse to accept responsibility for what a reporter wrote in the newspaper unless you are claiming that I said this to this reporter or that I in some way acted in a manner which suggests lack of impartiality towards the case of Mr. Franklin. I am not clear on what you are claiming I said or did and under what circumstances that give rise to your claims.

He then asked Franklin, "Did you call this reporter and ask the reporter where did you get the quotes that you attribute to Judge Schroeder?" Franklin stated that he had, but the reporter had not returned his call. After Franklin said that his motion relied on the newspaper article, Judge Schroeder finally admitted his role in the article and stated,

All right. Well, for the record a reporter did seek me out with respect to this issue and I declined to discuss it. When I say this issue, I am talking about the rule of the Court of Appeals in *State v. Lipke*. I have no idea why the reporter had an interest in the *Lipke* issue.

I did absolutely nothing to stoke the fire with respect to that decision. In the course of the written memorandum, which I filed in this case, I did make reference to this case as it was then pending in writing. And when I was approached by Mr. Krekowicz from the newspaper, I did tell him that I had issued a written memorandum . . . . And when he asked to interview me, I declined an interview and told him that what I had to say was already of record in the memorandum which was in the file, which was 95-CM-1326. Now, in that memorandum there is reference to Mr. Franklin's case.

At this point in the hearing, Judge Schroeder read aloud the paragraphs of the *Taylor* memorandum that referred to Franklin. This was the first time Franklin learned about the memorandum.

Following Judge Schroeder's reading of the memorandum, Franklin commented that the court had included information in the memorandum that was not in the record of the present case. Franklin argued that by reading the memorandum into the record, the information Judge Schroeder had independently obtained was now a part of the record in this case. Furthermore, Franklin pointed out that he could not be certain about what information the court would be relying on to determine the appropriate sentence in the case at hand.

Judge Schroeder denied the motion to recuse, stating that he was not biased against Franklin and that the memorandum contained only factually accurate information. Additionally, Judge Schroeder emphasized that he had used the word "allegations" in his references to Franklin's pending case:

> And I agree with you that it would have been improper had I said he was taken into custody in a tavern where he had stabbed two people in the course of an armed robbery. That would have been improper because it would have suggested that I had already made a conclusion about his guilt. But I do not feel that was done.

Judge Schroeder agreed, however, that Franklin was entitled to respond to the additional information and offered the parties a chance to examine the record in the earlier case. The parties chose to proceed.

Franklin was sentenced to 53 years' incarceration, the maximum sentence for both the armed robbery and the bail jumping counts. He also received 16 years, the maximum sentence, for the weapon charges, but the sentence was stayed in favor of probation. If probation is revoked, the two 16-year terms must be served consecutively.

Franklin appealed his conviction and sentence on due process grounds. He argued that the U.S. Constitution guarantees a defendant's right to be tried by an impartial

judge, and that his trial before Judge Schroeder violated that right because the judge demonstrated bias when he referred to Franklin's case in the *Taylor* memorandum. Franklin argued that Judge Schroeder "targeted" him and "used him as an example" while his case was pending before him. Franklin then requested that the court vacate his conviction and sentence.

The Wisconsin Court of Appeals affirmed Franklin's conviction. In addressing the recusal issue, the court examined only whether Judge Schroeder should have recused himself at sentencing; it never discussed Franklin's request that the court vacate his conviction. Applying *State v. Rochelt*, 477 N.W.2d 659 (Wis. Ct. App. 1991), the court first held that Judge Schroeder's statement that he was not biased against Franklin was sufficient to show that he was not subjectively biased. Next, it observed that all of the references in the memorandum, including those to Franklin's criminal history and the "alleged" stabbing, were factually accurate, and it noted that Franklin did not dispute the accuracy of those facts. For these reasons, in the court's view, Franklin had failed to demonstrate that recusal was necessary "under the objective portion of the recusal test." Franklin appealed to the Wisconsin Supreme Court, which summarily denied his petition for review.

In 2002, Franklin filed his amended petition for a writ of habeas corpus. The district court denied his petition, stating that Franklin had not pointed to any Supreme Court case that was unreasonably applied by the Wisconsin Court of Appeals, and he also did not show "actual bias" on the part of Judge Schroeder. The court then granted a certificate of appealability that included the issue of judicial bias by Judge Schroeder.

## II

An application for a writ of habeas corpus by a state court

prisoner must be granted if the state court adjudication resulted in a decision that was "contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), or that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254 (d)(2).

The Due Process Clause guarantees litigants an impartial judge, reflecting the principle that "no man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. 133, 136 (1955). Where the judge has a direct, personal, substantial, or pecuniary interest, due process is violated. *Bracy v. Gramley*, 520 U.S. 899, 905 (1997); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986); *Ward v. Monroeville*, 409 U.S. 57, 60 (1972); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Johnson v. Mississippi*, 403 U.S. 212, 215-16 (1971); *In re Murchison*, 349 U.S. at 137-39.

The general presumption is that judges are honest, upright individuals and thus that they rise above biasing influences. *Tumey,* 273 U.S. at 532; *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Taylor v. Hayes,* 418 U.S. 488, 501 (1974); see *Tezak v. United States*, 256 F.3d 702, 718 (7th Cir. 2001); *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1375 (7th Cir. 1994) (*en banc*); *Jones v. Luebbers*, 359 F.3d 1005, 1013-14 (8th Cir. 2004). "A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a possible temptation to be biased. But not all temptations are created equal.*" Del Vecchio*, 31 F.3d at 1372 (internal quote omitted). Nevertheless, the presumption is rebuttable. Sometimes, "the influence is so strong that we may presume actual bias," *Del Vecchio*, 31 F.3d at 1375; see *Withrow*, 421 U.S. at 47. In rare cases, there may even be evidence of actual bias. See *Bracy*, 520 U.S. at 905; *Bracy v. Schomig*, 286 F.3d 406, 411 (7th Cir. 2002) (*en banc*). To prove disqualifying bias, a petitioner must offer either

direct evidence or "a possible temptation so severe that we might presume an actual, substantial incentive to be biased." *Del Vecchio*, 31 F.3d at 1380. Absent a "smoking gun," a petitioner may rely on circumstantial evidence to prove the necessary bias. *Bracy*, 286 F.3d at 411-412; *id.* at 422 (Posner, J., concurring in part; dissenting in part); *id.* at 431 (Rovner, J., concurring in part; dissenting in part).

The question for us is whether the decision of the Wisconsin court's finding that Franklin failed to show actual bias was contrary to clearly established federal law, as articulated by the U.S. Supreme Court, or was based on either an unreasonable application of established principles or an unreasonable determination of the facts. See *Williams v. Taylor*, 529 U.S. 362, 376 (2000). On direct appeal, Franklin challenged his conviction and sentence on due process grounds based on the federal Constitution's guarantee of a defendant's right to be tried by an impartial judge. As noted above, the Wisconsin Court of Appeals limited its analysis to an assessment of his claim under the its own decision in *Rochelt*, 477 N.W.2d 659.

*Rochelt* sets forth a two-part test to determine whether a defendant's due process right to an impartial judge has been violated. *Rochelt*, 477 N.W.2d at 661. The first, a "subjective" inquiry, is based on the judge's own determination of his or her impartiality. *Id.* The second, an "objective" examination, asks whether a reasonable person could question the judge's impartiality. *Id.* If, after the objective inquiry, the judge's impartiality appears questionable, *Rochelt* instructs courts to perform a harmless error analysis. *Id.* at 662 & n.3. The *Rochelt* decision has little to say about federal law; it acknowledges *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) (holding that a state supreme court justice's participation in a case violated the appellant's due process rights, where the justice had a direct, personal, substantial, and pecuniary interest in that case) in a footnote, but it did not specifically discuss *Aetna Life* or

any other U.S. Supreme Court case in analyzing Rochelt's claim. 477 N.W.2d at 662.

Limiting the inquiry into judicial bias to the *Rochelt* test was inconsistent with the governing decisions of the U.S. Supreme Court. Both components of *Rochelt* look only for bias that resulted in demonstrable prejudice to the defendant. 477 N.W.2d at 662 ("A litigant is denied due process only if the judge, in fact, treats him or her unfairly.") (internal quote omitted). After applying the two components, if the court finds evidence of actual partiality, it then applies a harmless error analysis. *Id*. ("[E]ven though the trial judge's letter raises a reasonable question regarding the judge's impartiality, the fact is that Rochelt received a fair trial and therefore, the judge's refusal to recuse himself was harmless error.")

We conclude that the *Rochelt* analysis is contrary to clearly established federal law for two reasons. First, as Judge Evans of this court observed in his opinion for two different majorities of this court in *Bracy v. Schomig*, 286 F.3d at 410-11, the Supreme Court has decided that both actual bias and the appearance of bias violate due process principles. See *Bracy*, 520 U.S. at 905 (actual bias); *Tumey,* 273 U.S. at 535 (actual pecuniary interest and thus actual bias); *Aetna Life Ins. Co.*, 475 U.S. at 825 ("The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.'") (citing *In re Murchison*, 349 U.S. at 136). Second, where there is a structural error, such as judicial bias, harmless error analysis is irrelevant. See *Edwards v. Balisok*, 520 U.S. 641, 647 (1997); *Bracy*, 286 F.3d at 414; *Cartalino v. Washington*, 122 F.3d 8, 9-10 (7th Cir. 1997).

Furthermore, even if *Rochelt* is better understood as a decision that is not squarely contrary to the law as announced by the U.S. Supreme Court, we conclude in the

alternative that the Wisconsin Court of Appeals unreasonably determined that Judge Schroeder was not actually biased. Our alternative ruling is not based on the trial rulings that Franklin has criticized, which we find too ambiguous to be of much use. Instead, it is based on the references in the *Taylor* memorandum to Franklin's pending case, particularly as seen in the light of the judge's obvious reluctance to admit to Franklin that he had written the memorandum at all or that he had been asked about it by the reporter.

In the *Taylor* memorandum, Judge Schroeder included Franklin as an example of the terrible things that happen when indigent prisoners are released on bail pending their appeals: they simply commit more crimes while free. In context, despite the judge's use of the magic word "alleged" in the memorandum, the inference is irresistible that the judge was pointing to Franklin as the latest such incorrigible criminal, even though Franklin's trial had not yet taken place. This is powerful circumstantial evidence that Judge Schroeder had pre-judged Franklin's case. We note as well that, for purposes of the rule in *Liteky v. United States*, 510 U.S. 540 (1994), the *Taylor* memorandum and Judge Schroeder's contacts with the newspaper were extrajudicial activities vis-à-vis Franklin's own case.

The Wisconsin court nonetheless concluded that the memorandum and the trial rulings did not raise any reasonable questions regarding Judge Schroeder's impartiality. In essence, the court held that Judge Schroeder was not biased because he said that he was not biased and the facts that he included in the memorandum were true and not disputed by Franklin. But, under the Supreme Court's decisions in cases like *Tumey, Ward, Aetna Life,* and *Murchison,* the judge's own word for the presence or absence of bias is never enough, nor is it particularly probative that various historical facts the judge recites are accurate. In our view, no reasonable trier of fact could fail

to infer actual bias here. Judge Schroeder's motive in citing Franklin in the memorandum is clear— prisoners released under *Lipke* are free to commit more crimes. The memorandum demonstrates that Judge Schroeder decided the issue of Franklin's guilt long before trial. Therefore, the state appellate court unreasonably applied the Supreme Court's bias rules to the facts of Franklin's claim.

Although Judge Schroeder asserted that he would have cited Franklin's case in his memorandum even if the robbery had never occurred, this claim defies reason. Had Franklin not committed an offense while on release, his case would have offered no support whatsoever to Judge Schroeder's criticism of *Lipke*. The value of Franklin's case to Judge Schroeder's position lay in the fact that Franklin, out of custody because of *Lipke*, committed another violent crime, one that could have been prevented had he been incarcerated while awaiting appeal. We cannot contemplate any situation where acquitting Franklin or convicting him of a lesser included offense would have helped Judge Schroeder to make his point.

We are not saying that due process would be offended if a judge presiding over a case expressed a general opinion regarding a law at issue in a case before him or her. *Withrow*, 421 U.S. at 48-49; see *Del Vecchio*, 31 F.3d at 1377 n.3. The problem arises when the judge has prejudged the facts or the outcome of the dispute before her. In those circumstances, the decisionmaker "cannot render a decision that comports with due process." *Baran v. Port of Beaumont Navigation Dist. of Jefferson County Tex.*, 57 F.3d 436, 446 (5th Cir. 1995); see *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994); *Yamaha Motor Corp., U.S.A. v. Riney*, 21 F.3d 793, 798 (8th Cir. 1994). Compare *United States v. Microsoft Corp.*, 253 F.3d 34, 108-10 (D.C. Cir. 2001) (disqualifying district court judge who gave interviews to the press about his views of government civil suit pending before him). Here, the only inference that can be

drawn from the facts of record is that Judge Schroeder decided that Franklin was guilty before he conducted Franklin's trial. This is a clear violation of Franklin's due process rights.

## III

Because Judge Schroeder was actually biased, Franklin is entitled to a new trial. See *Edwards*, 520 U.S. at 647; *Bracy*, 286 F.3d at 414; *Cartalino*, 122 F.3d at 9-10. Accordingly, we VACATE and REMAND this case with instructions to grant Franklin's petition for habeas corpus unless the state institutes proceedings to re-try him within 60 days.

No. 03-1031 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*