**Alfred Ray BRADSHAW,
Petitioner-Appellee,**

v.

**O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellant.**

No. 85–2262.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1986.

Charles Palmer, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Daniel Zemann, Jr., Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Bryce J. Denny, Sherman, Tex., for petitioner-appellee.

Before GEE and WILLIAMS, Circuit Judges, and HINOJOSA *, District Judge.

### ON SUGGESTION FOR REHEARING EN BANC

(Opinion April 4, 1986 (5th Cir.1986),
785 F.2d 1327)

JERRE S. WILLIAMS, Circuit Judge:

The petition for rehearing by O.L. McCotter, Director, Texas Department of Corrections, is GRANTED.

This case involves the petition for habeas corpus of Alfred Ray Bradshaw who is serving a term for burglary in the Texas Penal System. The district court granted his petition ordering a new out-of-time appeal or a new trial. Bradshaw's claim was that one of the judges on the Texas Court of Criminal Appeals who heard his appeal was Judge Jim Vollers whose name also appeared on the state's brief on the appeal as the state prosecuting attorney. The evidence shows that when Judge Vollers was appointed to the Texas Court of Criminal Appeals he did recuse himself in every case in which he had played any part on the appeal as the state prosecuting attorney. It was a common although not universal custom in Texas, however, to include the name of the Texas state prosecuting attorney on briefs on criminal appeals although

---

* District Judge of the Southern District of Texas,    sitting by designation.

he had not read them nor approved of them. Judge Vollers did not recuse himself in the cases where he actually had had nothing to do with the appeal.

In our decision in *Bradshaw v. McCotter*, 785 F.2d 1327 (5th Cir.1986), we affirmed the granting of the habeas corpus petition by the district court even though Bradshaw's was one of the cases in which Judge Vollers had not participated at all in the appeal brief although his name did appear first on the brief.

An intervening decision of the United States Supreme Court convinces us that we wrote too broadly and held incorrectly in Bradshaw's case. Just over two weeks after we affirmed the district court in this case, the Supreme Court handed down the decision of *Aetna Life Insurance Co. v. Lavoie*, —— U.S. ——, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). In that case the Alabama trial court jury had awarded $3,500,-000 in punitive damages against an insurance company for alleged bad-faith refusal to pay a valid claim. The Alabama Supreme Court affirmed this decision by a vote of 5 to 4. One of the justices on the majority, actually the one who wrote the per curiam opinion, was shown to have pending exactly the same kind of lawsuit for punitive damages against an insurance company. The Supreme Court concluded that this justice had a "direct, personal, substantial, [and] pecuniary" interest in upholding the exceeding large punitive damages award because it enhanced the value of his own punitive damages claim in the suit which he had pending. *Lavoie*, —— U.S. at ——, 106 S.Ct. at 1586. The Court concluded that the justice was disqualified and his participation in the case was a violation of due process of law. The Court emphasized in its opinion that the justice's "vote was decisive in the 5 to 4 decision."

■ Although *Lavoie* was a civil rather than criminal case, we follow its reasoning. Lacking a showing in this case that Judge Vollers' vote was controlling, no prejudice has been shown as the result of the conclusion that he should have recused himself. As Judge Vollers' vote was not controlling in Bradshaw's case, we reverse the district court and deny the petition for habeas corpus.

■ We add that we are not modifying our conclusion in our original opinion that Judge Vollers should have disqualified himself in all cases in which his name appeared on the brief as a prosecutor. As we said in our earlier opinion, "[t]he appearance of Vollers' name on the prosecuting attorney's brief undermined a fundamental aspect of our criminal justice system: a judge's neutrality." *Bradshaw*, 785 F.2d at 1329. Therefore, we delete only the final two paragraphs of our opinion in now holding that no constitutional violation was shown even though Judge Vollers sat on the appeal when he should have disqualified himself. Under the persuasive reasoning of *Lavoie*, the constitutional violation would result only if Judge Vollers' vote was controlling, and it was not in Bradshaw's case.

No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.

REVERSED.

PETITION FOR HABEAS CORPUS DENIED.

GEE, Circuit Judge, concurring specially:

Further reflection has persuaded me that a rule which requires recusal on the basis of appearances *alone* is too broad, and I therefore concur in the judgment only. In this case, there is not even a claim that Judge Vollers had anything to do with resisting Bradshaw's appeal, only that an uninformed observer might believe that he did. Doubtless he might, Judge Voller's name having been placed on the state's brief on the direct appeal as a matter of courtesy by the prosecuting attorney. By the same token, it would follow that Judge John Jones should not sit in the trial of an unrelated person named John Jones, Jr.,

for fear that it might be thought that he presided over the trial of his own son. I do not think that is necessary. Where there is *in fact* no ethical question whatever involved, I do not think there is any necessity to disrupt settled arrangements in order to preserve appearances to the uninformed. Nor do I think the Supreme Court has said so.

*In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), cited by us in our earlier opinion, concerned a case where genuine bias was likely when one who had actually sat in a quasi-prosecutorial capacity earlier in the case came along later to sit in a judicial one. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), cited by the Court in *Murchison* and by us, involved another such case, where a magistrate made money from "guilty" findings, but not from findings of "not guilty." And *Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), also cited by us and the *Murchison* court, concerned a judge who, having exchanged insults with a lawyer through the entire course of a lengthy trial, held him in contempt at its conclusion. The common thread running through these cases is that each presented a "procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the state and the accused . . ." *Murchison*, 349 U.S. at 136, 75 S.Ct. at 625. And it was in that context that the Court, having observed that "[s]uch a stringent rule may sometimes bar trial by judges who have no actual bias," went on to quote from *Offutt* the tag "justice must satisfy the appearance of justice." *Id.*

The meaning of this saying, taken in context, is that where a real possibility of bias against a given defendant exists on the part of a judge, the rule to apply is a prophylactic one keyed to the ability and temperament of the average man, even though the particular judge in question might be capable of rising above the situation. Thus the average man, who judges by his own lights, will perceive injustice as having been avoided, even though sometimes a nobler character than he is unnec-

essarily disqualified. But this has no application, it seems to me, to a case like ours, where the average man (and the defendant as well)—if he knew the facts—would immediately perceive that there was not even ground for argument that the judge bore personal prejudice against him: indeed, he had never even heard of him!

Another way to look at the case is, when we speak of appearances, are we referring to how the case appears to the uninformed observer or how it seems to one who has the facts? Appearances or reality? Canon 3 C. of the Code of Judicial Conduct opts for reality, it seems to me:

C. *Disqualification*

(1) A judge shall disqualify himself in a proceeding in which his impartiality might *reasonably* be questioned, including but not limited to instances where:

(a). He *has* a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

The words that I have emphasized indicate that the Canon is addressing reality; a focus on appearances would have called forth different language: "might appear to be in question," "he appears to have a personal bias . . .," and so on. For what it is worth, the considerable body of precedent that exists regarding lawyer disqualification opts for reality also, although the considerations involved are not precisely the same. See Model Rules of Professional Responsibility Rule 1.7; Article, 94 Harvard Law Review 1244, and cases cited, e.g., *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.*, 518 F.2d 751 (2nd Cir.1975).

In sum, where there is room for doubt about the existence of bias I quite agree that appearances must be served. Doing so will sometimes require one who feels no bias to disqualify himself despite this. But where there is in fact no room for doubt and no contention whatever of actual bias—as is the case in this appeal—I do not

believe that naked appearances should be held to require a magistrate's recusal.