UNITED STATES, Appellee,

v.

Kerry V. LYNN, Engineman Third
Class, U.S. Navy, Appellant.

No. 99–0560.
Crim.App. No. 97–1482.

U.S. Court of Appeals for
the Armed Forces.

Argued May 3, 2000.

Decided Sept. 29, 2000.

Sullivan, J., filed dissenting opinion.

COX, S.J., delivered the opinion of the
Court, in which CRAWFORD, C.J., and
GIERKE and EFFRON, JJ., joined. SUL-
LIVAN, J., filed a dissenting opinion.

For Appellant: *Lieutenant Omar R. Lo-
pez*, JAGC, USNR (argued).

For Appellee: *Lieutenant Kevin S. Rosen-
berg*, JAGC, USNR (argued); *Colonel Kevin
M. Sandkuhler*, USMC, *Commander Eugene
E. Irvin*, JAGC, USN, and *Lieutenant
James E. Grimes*, JAGC, USNR (on brief).

Senior Judge COX delivered the opinion of
the Court.

A general court-martial convened at Kings
Bay, Georgia, convicted appellant, contrary
to his pleas, of rape and making a false
official statement, violations of Articles 120
and 107, Uniform Code of Military Justice, 10
USC §§ 920 and 907. His approved sen-
tence extends to a dishonorable discharge,
confinement for 3 years, and reduction to E–
1.[1] The Navy–Marine Corps Court of Crimi-
nal Appeals (NMCCA) affirmed. 50 MJ 570
(1999).

The real issue before this Court is whether
it was an abuse of discretion for a judge on

---

1. Appellant was also convicted, contrary to his
pleas, of indecent assault, in violation of Article
134, UCMJ, 10 USC § 934, but the convening
authority dismissed that charge posttrial and re-
duced the term of confinement from 4 years to 3.

the NMCCA to not recuse himself from the case.[2]  See Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 490 (1st Cir.1989) ("our oversight of a recusal motion's denial is limited to a search for abuse of discretion").  We hold that it was not an abuse of discretion for Judge Dorman to participate in this case.

## I

There is no dispute that: (1) prior to becoming a Judge of the NMCCA, Colonel (Col) C.W. Dorman, USMC, was the Director of the Appellate Government Division of the Navy–Marine Corps Appellate Review Activity ("Appellate Government"); (2) at the time appellant's appeal reached the NMCCA and a copy of the record of trial was provided to Appellate Government, Col Dorman was still the Director of Appellate Government; (3) Appellate Government did not oppose, indeed did not respond, to the first *seven* motions for enlargement of time by appellant; and (4) Col Dorman was the Director of Appellate Government while each of those first seven motions for enlargement of time was filed and processed by the NMCCA.  Had this case been presented to the court below without any enlargements, it is likely that the case would have been disposed of by the NMCCA before Judge Dorman's appointment to the court.

There is no dispute that, by the time appellant made his *eighth* motion for enlargement of time—after which Appellate Government first entered an opposition—Col Dorman was gone from Appellate Government.  Indeed, there is no dispute that Col Dorman was, by then, a Judge of the NMCCA.  And there is no dispute that it was Judge Dorman himself who *granted* appellant's eighth motion for enlargement of

time.[3]  Thus, the focus of the issue is on Col Dorman's role during the first seven motions for enlargement of time, and whether his involvement, if any, should have caused him to be recused from reviewing appellant's case as an appellate judge.[4]

## II

As Col Dorman's participation only became an issue in the case long after the court-martial adjourned, there has been no evidentiary hearing into the underlying facts of his appellate role.  Rather, the information has been provided largely by a process of assertion and concession in the appellate pleadings and oral argument, and by appellate counsels' submission of posttrial affidavits and other documentation.

For example, on March 20, 2000, appellant moved to attach, *inter alia*, an affidavit, dated June 15, 1998, made by Col Dorman.[5]  In it, Col Dorman stated his arrival ("July 1995") and departure ("27 May 1998") dates at Appellate Government, and he described generally his practices with respect to the supervision of pleadings arising within his Division.  No reference was made to appellant's case.  The Government did not oppose appellant's motion to attach, and we granted it on April 5, 2000.  53 MJ 242 (2000).

On April 11, 2000, the Government moved to attach several affidavits of its own.  One was a new affidavit from Col Dorman, dated April 10, 2000, in which he described in much more detail the timetable of events concerning his selection as an appellate judge, his absence from Appellate Government for judicial training, and his final duties and departure from Appellate Government.  He related his decision "to recuse [him]self from participating in any case in

2.  Specifically, the granted issue is: "WHETHER A JUDGE ON THE LOWER COURT HAD A CONFLICT OF INTEREST THAT REQUIRED RECUSAL FROM REVIEW OF APPELLANT'S CASE."

3.  The NMCCA also granted appellant's ninth and tenth motions for enlargement of time, over Government objection, before appellant filed his initial Brief and Assignments of Error at the NMCCA.

4.  On September 8, 1998, appellant made a timely motion at the NMCCA to recuse Col Dorman.  The Government apparently did not respond to the motion, and it was denied without explanation by the Chief Judge of the NMCCA on September 15, 1998.

5.  This affidavit was apparently made in anticipation of appellant's motion to recuse Col Dorman at the NMCCA.

which an appellant had filed a brief raising an assignment of error with the NMCCA on or before 26 May 1998, the day [he] was relieved of duties as the Director of the Appellate Government Division."

Col Dorman also averred that

[t]he appellant's motion for my recusal was denied by the Chief Judge because: I had no prior knowledge of the case, and the appellant's brief and assignments of error was filed with the NMCCA long after my appointment to the court. Because of those facts, the Chief Judge saw no need to address the factual errors in the appellant's motion for my recusal.

Affidavits from the Deputy Director of the Appellate Government Division and the Supervisory Legal Assistant of the Division aver that, during the pertinent period, when records of trial were received in the Division they were initially stored; that the Government's practice was not to respond to an appellant's first seven motions for enlargement of time; and that records of trial were not assigned to government counsel or reviewed in any respect until either an appellant filed an eighth motion for enlargement of time or a defense brief was filed. If an appellant filed either an eighth motion for enlargement or a defense brief, the record, for the first time, would be retrieved from storage and would be sent to the Deputy

Director of the Division. At that time, the Deputy Director would assign a government counsel to the case.[6]

On April 18, 2000, appellant filed an opposition to the Government's April 11 motion to attach. Appellant argued, variously, that since the Government had not responded to appellant's motion to recuse Judge Dorman at the NMCCA, it should not be allowed to submit affidavits now; that there is, in any event, "nothing in the instant affidavits that presents anything new for this Court to review"; and that this Court should not be engaging in factfinding. Appellant moved, instead, that we "simply remand the case for consideration by a new [NMCCA] panel"; in other words, that we set aside the decision below.

On May 3, 2000, we heard oral argument in the case. There, appellate defense counsel conceded that Col Dorman took no action in appellant's case while assigned to Appellate Government, and that, indeed, no action at all was taken in appellant's case by Appellate Government until after Col Dorman departed the Division. In addition, appellate defense counsel did not dispute that it was the Government's policy to take no action in cases until an eighth motion for enlargement of time was filed or an initial brief was filed by an appellant.[7]

---

**6.** In appellant's case, this assignment of counsel occurred "on 8 or 9 September 1998." *Pro forma* oppositions to appellant's eighth, ninth, and tenth motions for enlargement of time had been entered on July 2, August 3, and September 1, 1998, respectively, over the signature of the Appellate Government Deputy Director.

**7.** In light of these circumstances, we hereby grant the Government's April 11 motion to attach.

On May 5, 2000, several days after we heard oral argument in this case, appellant moved to attach additional documents, or again, in the alternative, moved that we simply set aside the decision below and order that a new panel decide appellant's appeal below.

The proffered documents include pleadings from an unrelated case, in which the appellant moved the NMCCA to compel the Government to produce certain documents related to the record of trial, including a transcript of a proceeding in revision, a "cleansed charge sheet" used by the members at trial, and an exhibit used by the Government as demonstrative evidence. Appar-

ently, during a time Col Dorman was absent from Appellate Government for judicial training, the Government responded, through appellate government counsel, and provided the requested information. Apparently, the appellant in that case did not file a brief until after Col Dorman departed Appellate Government, and Col Dorman sat as a member of the NMCCA panel that reviewed the case. Appellant cites this as a deviation from Col Dorman's policy of recusing himself from all cases briefed prior to his departure.

In addition, appellant cites some 15 cases "decided" by Judge Dorman at the NMCCA, wherein appellant alleges that "pleadings were filed"— "*not only* [by the] appellants, but in some cases, also [by] *the government*"—prior to Col Dorman's "relief of duties" as Director of Appellate Government. Appellant provides no further particulars about these cases, or the nature and timing of the pleadings to which he refers. Under these circumstances, the materials offered by appellant go to the question of whether Judge Dorman adhered to the line in other cases, and are insuf-

As previously indicated, the "facts" of this appeal are essentially stipulated or unrebutted. *See United States v. Ginn,* 47 MJ 236, 241–42 n. 4 (1997). The thrust of appellant's contention is that Appellate Government's receipt of a copy of his record of trial while Col Dorman was still Director of the Division, without more, mandated his recusal as judge, notwithstanding that the record remained in storage and unreviewed until after his departure from the Division.

### III

Title 28 USC § 455 provides, in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding *in which his impartiality might reasonably be questioned.*

(b) He shall also disqualify himself in the following circumstances:

\* \* \*

(3) Where he has served in governmental employment *and in such capacity participated as counsel, adviser* or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

(Emphasis added.)

■■■ Title 28 USC § 455 applies to judges of the Courts of Criminal Appeals. *United States v. Hamilton,* 41 MJ 32, 39 (CMA 1994). Canon 3C of the Code of Judicial Conduct RCM 902(a), Manual for Courts–Martial, United States (1995 ed.), are virtually identical. *See also United States v. Wright,* 52 MJ 136, 140–41 (1999); *United States v. Morgan,* 47 MJ 27, 29 (1997). As we noted in *United States v. Mitchell,* 39 MJ 131, 143 (CMA 1994):

The test is whether a reasonable person *who knew all the facts* might question these appellate military judges' impartiality.

ficient to raise a question of fact as to whether he failed to draw a line or that he failed to adhere to it in the present case.

Without prejudice to the appellate rights of any of these servicemembers, we decline to consider

At the same time, judges are cautioned not to leave cases "unnecessarily." *Wright, supra* at 141. Recusal decisions by inferior courts are normally reviewed with an abuse of discretion standard. *Mitchell, supra* at 144 n. 7.

■■■ In the instant case, Judge Dorman made a specific decision as to how he would approach the issue of recusal with respect to the relationship between his service in Appellate Government and his subsequent appointment as a Judge on the Court of Criminal Appeals. He decided to draw the following line: he would recuse himself in any case in which an appellant filed a brief raising an assignment of error with the Court of Criminal Appeals on or before the date on which he was relieved of his duties at Appellate Government. In view of the practice at Appellate Government of not reviewing the record in such a case until such a brief was filed, or until there was an eighth request for an enlargement of time, and in view of his unrebutted statement that he had no involvement in the present case while at Appellate Government, it was not an abuse of discretion for Judge Dorman to participate in the present case. We are quite confident that a reasonable person who knew all the facts would not question Judge Dorman's ability to be impartial in the review of appellant's case.

The cases relied upon by appellant are not apposite. Thus, in *Bradshaw v. McCotter,* 785 F.2d 1327 (5th Cir.) *rev'd en banc,* 796 F.2d 100 (5th Cir.1986), one of the judges on the Texas Court of Criminal Appeals who sat in review of Bradshaw had been the Texas State Prosecuting Attorney. As such, his office "assisted local prosecutors throughout Texas on criminal cases ... [and] provided expertise and additional manpower to local prosecutors who requested it." 785 F.2d at 1328. Although the judge did not participate in Bradshaw's case "in any fashion whatsoever," *Id.* at 1329, his name "appeared [apparently as a courtesy] on the state's brief on the appeal [in Bradshaw's case]." 796 F.2d

here any of these unrelated cases, on the bases proffered. Accordingly, we deny appellant's May 5 motion to attach.

at 100. The Fifth Circuit Court of Appeals concluded that the judge "should have disqualified himself in all cases in which his name appeared as a prosecutor." *Id.* at 101. The Court noted, "The appearance of [the judge's] name on the prosecuting attorney's brief undermined a fundamental aspect of our criminal justice system: a judge's neutrality." 785 F.2d at 1329.

The contrasts with the instant case are apparent. The Appellate Government Division does not exercise prosecutorial discretion; and its Director is not a chief prosecutor. The Division primarily reacts and responds to pleadings filed by servicemember-appellants and appears in support of those pleadings before the respective appellate courts.[8] Further, Col Dorman's name appeared on no briefs filed in appellant's case.

Similarly, appellant cites several cases for the proposition that "a United States Attorney serves as counsel to the government in all prosecutions brought in his district while he is in office and that he therefore is prohibited from later presiding over such cases as a judge." *Kendrick v. Carlson,* 995 F.2d 1440, 1444 (8th Cir.1993); *see United States v. Di Pasquale,* 864 F.2d 271, 278–79 (3rd Cir. 1988); *Barry v. United States,* 528 F.2d 1094, 1099 (7th Cir.1976); *United States v. Amerine,* 411 F.2d 1130, 1133–34 (6th Cir. 1969). There are significant differences between the functions and involvement of a

United States Attorney, who supervises the investigation and prosecution of all criminal cases within his district, and the functions and involvement of the Director of the Navy–Marine Corps Appellate Government Division.[9]

There is no contention before us that Judge Dorman had any involvement, either personal or supervisory, in this case. Indeed, there is no contention that Appellate Government took any action whatever on appellant's case while Judge Dorman remained with the Division. The contention, rather, is that the facts create an insidious specter amounting to an impermissible appearance. We disagree. Judge Advocates who have engaged in an active appellate practice, like their civilian counterparts in and out of government, typically are well-qualified for service on the appellate bench. It is not our province, however, to assess whether any particular person should be appointed to the bench; rather, we must decide whether the recusal policy adopted by Judge Dorman, as applied to the present case, was consistent with applicable legal standards.[10] Given the decision by his superiors to appoint the Director of Appellate Government to the appellate bench, we would agree that the point chosen by Judge Dorman as to where to draw the line on recusal does not amount to an abuse of discretion. For, as this record reveals, lengthy defense appellate delays are sufficiently common that the Government has

8. The fact that prosecuting attorneys in the field can call Appellate Government for information on the status of the law or legal advice in no way approximates the tactical field support function of the Texas State Prosecuting Attorney. It is not contended here that trial counsel in appellant's case sought or obtained any legal advice from Appellate Government while prosecuting appellant's court-martial.

9. The Chief of the Appellate Government Division's role is unlike that of a U.S. Attorney or the District Attorney for a county. Both the U.S. Attorney and the District Attorney have primary responsibility for the prosecution of cases at the trial level. That is not the role the Chief of the Appellate Government Division plays for the Navy. The fact that other lawyers may request assistance from the Appellate Government Division in addressing pending issues does not equate the responsibilities of the Chief of the

Appellate Government Division to the discretionary authority exercised by a person serving as a U.S. Attorney or a District Attorney.

10. We note that, at or about the same time Judge Dorman was appointed to the NMCCA, the former Director of the Appellate Defense Division, Captain Carol J. Cooper, USN, was also appointed to the NMCCA. Apparently at her own volition, she instituted a procedure whereby both appellants and the Government were given an opportunity to waive objection to her participation on cases arising during her tenure as Director, without which waiver she would recuse herself. This procedure certainly avoids the situation in which Judge Dorman finds himself, but it does not appear to be a requirement of the NMCCA, the Navy, the Marine Corps, or any statute, regulation, or ethical standard, and we express no view as to the merits of the procedure.

gone to the extent of formulating a policy of not even opposing the first seven motions for enlargement of time,[11] and indeed it appears that even the succeeding oppositions are quite perfunctory. In that context, the position taken by Judge Dorman is reasonable because it limits his participation to those cases in which Appellate Government had no substantive involvement.

We conclude that the NMCCA did not abuse its discretion in not recusing Judge Dorman from this instant case. Col Dorman did not participate in this case, and a reasonable person with knowledge of the facts would not question his ability to be impartial in this matter.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (dissenting):

I disagree with the majority's abuse of discretion approach to this case. Instead, I would hold that Judge Dorman erred in failing to recuse himself. In my view, federal law required recusal in this case, and Judge Dorman had no discretion to formulate his own recusal policy in derogation of those statutory provisions. *See United States v. Arnpriester,* 37 F.3d 466, 467 (9th Cir.1994). More particularly, his recusal was required by 28 USC § 455(b)(3) (prior government employment disqualification) and 28 USC § 455(a) ("impartiality might reasonably be questioned" disqualification).

Turning first to 28 USC § 455(b)(3), I find that Congress, not Judge Dorman, has drawn the line concerning this judicial disqualification. It has stated:

§ 455. **Disqualification of justice, judge, or magistrate**

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonable be questioned.

(b) *He shall also disqualify himself* in the following circumstances:

\* \* \*

(3) *Where he has served in governmental employment and in such capacity participated as counsel,* adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(Emphasis added.)

It is undisputed in this case that Judge Dorman in his earlier governmental employment was the Director of the Appellate Government Division when appellant began his appeal at the Court of Criminal Appeals. *See* Article 70, UCMJ, 10 USC § 870; RCM 1202, Manual for Courts–Martial, United States (1995 ed.). Thus, when appellant filed his appeal, Judge Dorman was in charge of the government prosecution team that was responsible for the opposition to appellant's appeal.[1] It is this role (of the then Colonel Dorman), with its official responsibilities with regard to this case as the senior officer and branch chief of the prosecution team, that mandatorily disqualified him from deciding this case when he was transferred to the Court of Criminal Appeals. *See United States v. Arnpriester, supra* (knowledge and acts of his assistants strictly imputed to U.S. Attorney); *United States v. Siders,* 17 MJ 986, 987 (ACMR 1984) (head of appellate government division disqualified from doing subsequent judge advocate review); *cf. United States v. Hurt,* 9 USCMA 735, 752–54, 27 CMR 3, 20–22 (1958) (board of review judge assigned as government appellate lawyer after decision reached but before published not disqualified).

In addition, the general statutory standard for judicial recusal is whether the judge's impartiality "might reasonably be ques-

---

11. In so observing, we cast no aspersion of the Appellate Defense Division. Quite the contrary, the mere fact that the Government, as a matter of policy, regularly did not contest the first seven motions for enlargement of time suggests that it was aware of chronic understaffing of the Appellate Defense Division, a matter obviously out of the control of the Division.

1. I disagree with the majority's view of the nature of the Chief of the Appellate Government Division position and have attached as support for my view the web page of the Appellate Government Division, Office of the Judge Advocate General, United States Navy. *See* http://www.jag.navy.mil/html/headquarters.htm.

tioned." 28 USC § 455(a). The Supreme Court has further explained that "what matters" in making an objective determination of recusal under § 455(a) is "not the reality of bias or prejudice but its appearance." *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

Accordingly, there was a *prima facie* appearance of a conflict of interest in this case. When appellant's case was filed in the Navy–Marine Corps Court of Criminal Appeals, Colonel Dorman was the *de jure leader of the prosecution team;* [2] and, at the time of the Court of Criminal Appeals' resolution of appellant's case, Judge Dorman was the *author of the Court's decision.* In my view, a reasonable person would question the impartiality of this appellate judge.[3] *See United States v. Arnpriester, supra.*

This case should be remanded to the Court of Criminal Appeals for a new judicial review under Article 66, UCMJ, 10 USC § 866. This judicial remand is a small price to pay to insure all parties on appeal that they will have their cases heard in a system where the judges are free of even the appearance of a statutory conflict of interest.

2. *Id.*

3. In *United States v. Mitchell,* 39 MJ 131, 144 n. 7 (CMA 1994), this Court applied a "de novo" standard of review, imparting no discretion to the trial judge.

APPENDIX

Navy-Marine Corps Appellate Review Activity
Appellate Government Division
Office of The Judge Advocate General
United States Navy

716 Sicard Street SE, Suite 1000
Washington Navy Yard, DC 20374-5047
(202) 433-2230

| Deputy Assistant Judge Advocate General | LtCol Marc W. Fisher, USMC |
| --- | --- |
| Deputy Division Director | LCDR Philip L. Sundel, JAGC, USN |

## Mission

Pursuant to Articles 70(a) and (b) of the Uniform Code of Military Justice, the Appellate Government Division is responsible for representing the United States in criminal appellate proceedings before the Navy-Marine Corps Court of Criminal Appeals (NMCCA), the United States Court of Appeals for the Armed Forces (USCAAF), and the Supreme Court of the United States in approximately 2400 cases annually. Makes recommendations to the Judge Advocate General concerning issues to be certified to the Court of Appeals for the Armed Forces. Additionally, the Division provides support to trial counsel and staff judge advocates in the field with timely and accurate advice concerning their representation

in the court-martial and post-trial processes

### PRINCIPAL FUNCTIONS

#### Appellate Representation of the United States

Drafts briefs in response to appellant defense counsel's assignments of errors; presents oral argument before NMCCA and USCAAF, and, in conjunction with the Solicitor General's Office, the United States Supreme Court.

Additionally, the Director, Appellate Government Division, is the sole representative of the Department of the Navy authorized to file Government appeals and extraordinary writs from adverse rulings of military trial judges.

#### Trial Counsel Assistance Program (TCAP)

Furnishes advice to assist trial counsel, staff judge advocates, and legal officers in the field in resolving military justice issues on a real time basis.

#### Training

Provides secondary source for training through on-site visits as well as publication of the Electronic Viewpoint.